```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                SOUTHERN DISTRICT OF GEORGIA
                       AUGUSTA DIVISION
```

JEFF HAWN and JENELL HAWN,           *
                                     *
     Plaintiffs,                     *
                                     *
          v.                         *
                                     *     CV 122-004
NATIONSTAR MORTGAGE LLC, d/b/a       *
MR. COOPER,                          *
                                     *
     Defendant.                      *
                                     *

# O R D E R

Before the Court is Defendant Nationstar Mortgage LLC's ("Nationstar") motion to dismiss. (Doc. 7.) For the reasons that follow, Nationstar's motion is **GRANTED**.

## I. BACKGROUND[1]

This dispute is about whether Nationstar breached a settlement agreement (the "Settlement Agreement") it previously entered into with Plaintiff Jeff Hawn after it wrongfully foreclosed on Plaintiffs' residence. Plaintiffs allege Nationstar breached the Settlement Agreement, so they sue for specific performance of the same, intentional infliction of emotional

---

[1] In deciding this motion to dismiss, the Court accepts all facts alleged in the amended complaint as true and construes all reasonable inferences in the light most favorable to Plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

distress ("IIED"), damages for breach of the Settlement Agreement, a "common law tort claim," and punitive damages and attorney's fees. (Doc 1-2, at 10-13.) Nationstar, however, argues Plaintiffs' suit should be dismissed on its face because the complaint does not show a breach of the Settlement Agreement. (Doc. 7-1, at 1-2.) The facts are laid out below.

Plaintiffs are two individuals who, in 2007, executed a security deed in the original principal amount of $180,000.00 to secure debt in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"). (Doc. 1-2, at 5.) That security deed was given in security of a promissory note of even date, executed by Plaintiffs in favor of MERS in the same amount. (Id.) The debt was for a mortgage on their home (the "Residence") located in Columbia County, Georgia. (Id.) After a series of assignments, Nationstar became, and remains, the holder of the security deed and the note. (Id.)

In 2014, Plaintiff Jeff Hawn entered Chapter 13 bankruptcy in this District. (Id. at 6.) In the context of the bankruptcy proceedings, Nationstar "and Plaintiff Jeff Hawn entered into a Consent Order" which provided for certain post-petition arrearage payments and monthly payments. (Id.) "Plaintiffs timely and perfectly complied with their obligations under [the] Consent Order," and the bankruptcy court "administratively closed the Chapter 13 case on March 18, 2019." (Id. at 7.)

2

Following the completion of the bankruptcy and Plaintiff Jeff Hawn's associated payments in 2019, Nationstar wrongfully commenced a non-judicial foreclosure proceeding against the Residence. (Id. at 7-8.) In response, Plaintiffs sued for wrongful foreclosure in the Superior Court of Columbia County, after which the Parties entered into the Settlement Agreement. (Id. at 8.) The Settlement Agreement provided, as relevant here, that Plaintiffs would: (1) "tender Four Thousand Four Hundred Forty-Four Dollars and 56/100 ($4,444.56)" to Nationstar; (2) "On or before April 30, 2020, make a monthly mortgage payment for the payment due April 1, 2020"; and (3) "Resume regular monthly mortgage payments thereafter beginning May 1, 2020." (Id.) Nationstar agreed that

> [w]ithin ten (10) business days after the later of, (i) the execution by all of this Settlement Agreement, (ii) the dismissal by [Plaintiff] of the [a]ction and all claims . . . against [Nationstar], (iii) and the receipt of all sums due to be paid pursuant to [the Settlement Agreement], [Nationstar] shall apply the $4,444.56 tendered, along with current funds on hand and in suspense, waive all fees, costs, advances and arrears, and reflect [Plaintiff's] account current through and including April 30, 2020, and due for a May 1, 2020 payment[.]

(Id. at 9.) Plaintiffs claim they "have timely made, and [Nationstar] . . . has accepted, each and every mortgage payment which has come due from and including May 1, 2020 to the date of [their] Complaint." (Id.) Plaintiffs claim, however, that their

3

"July[] payment was returned with the statement from [Nationstar] notifying [them] that payment was declined." (Id.) Plaintiffs allege that "[b]eginning in May 2020 through the date of [their] Complaint, Plaintiffs have regularly received account statements from [Nationstar] reflecting that Plaintiffs were indebted to [Nationstar] for as much as $23,441.17," in spite of the fact that they "have made every payment as the same came due and payable to [Nationstar] since the execution of the Settlement Agreement." (Id.) As a result of these monthly account statements showing a default, Plaintiffs allege "[Nationstar] has failed to mark Plaintiffs' account as current through April 30, 2020" in violation of the Settlement Agreement. (Id. at 10.) Their suit arises from that alleged violation.

Before continuing, it is important to note one factual wrinkle in this case. The Parties entered into the Settlement Agreement "[s]ometime on or around June 16, *2020*." (Id. at 8 (emphasis added).) Plaintiffs' counsel admits, however, that he "did not file a dismissal of the [w]rongful [f]oreclosure [c]ase until June 21, *2021*, well after Plaintiff [Jeff Hawn] was required to file the dismissal." (Doc. 11, at 6-7 (emphasis added).) As noted above, Nationstar agreed to "apply the $4,444.56 tendered, along with current funds on hand and in suspense, waive all fees, costs, advances and arrears, and reflect [Plaintiff's] account current through and including April 30, 2020, and due for a May 1, 2020

4

payment" "[w]ithin ten (10) business days *after the later of*, (i) the execution by all of this Settlement Agreement, (ii) *the dismissal by [Plaintiff] of the [a]ction and all claims . . . ,* (iii) *and* the receipt of all sums due to be paid pursuant to [the Settlement Agreement]." (Doc. 1-2, at 9 (emphasis added).) Accordingly, as discussed below, Nationstar was not contractually required to comply with the terms of the Settlement Agreement until July 2, 2021 - ten days after Plaintiffs' counsel filed the dismissal of the wrongful foreclosure case.

Nationstar now moves the Court to dismiss Plaintiffs' suit for several reasons. First, it claims it *did* comply with the terms of the Settlement Agreement, so Plaintiffs' claim for specific performance must fail. (Doc. 7-1, at 6-8.) Second, Nationstar claims that Plaintiffs fail to "establish any conduct that is even arguably egregious enough to support their [IIED] claim"; third, that Plaintiffs have failed to allege the essential elements of breach of contract; fourth, that Plaintiffs' "common law tort claim" fails because it is barred by the Settlement Agreement and the economic loss rule; and, fifth and finally, that because all of Plaintiffs' other claims fail, they are not entitled to punitive damages or attorney's fees. (Id. at 8-20.) The Court addresses the Parties' arguments below.

5

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." Id. A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

## III. DISCUSSION

### A. Specific Performance

First, Nationstar argues it cannot be ordered to perform under the Settlement Agreement because it *already did* perform under the terms of the Settlement Agreement. (Doc. 7-1, at 6-8.) Specifically, it argues that "pursuant to the alleged terms of the Settlement Agreement, . . . Nationstar . . . had ten . . . business days (i.e. until July 2, *2021*)" to comply with the terms of the Settlement Agreement. (Id. at 7 (emphasis added).) "As indicated by [Plaintiffs' exhibits], . . . Plaintiffs' [l]oan was marked current internally for many months past the alleged April 30, 2020 date in the Settlement Agreement." (Id.) "In fact, Plaintiffs' [l]oan was marked current internally well into 2021." (Id.) Nationstar argues this demonstrates compliance with the Settlement

7

Agreement, which required it only to mark Plaintiffs' account current through April 30, 2020 as of July 2, 2021. "[S]ince Nationstar [was] already in compliance with the terms of the Settlement Agreement[,]" it argues "this count of the Complaint should be dismissed." (Id. at 7-8.)

The exhibits support Nationstar's contentions.[2] The terms of the Settlement Agreement required Nationstar to "apply the $4,444.56 tendered, along with current funds on hand and in suspense, waive all fees, costs, advances and arrears, and reflect [Plaintiff's] account current through and including April 30, 2020, and due for a May 1, 2020 payment." (Doc. 1-2, at 9.) Plaintiffs' exhibits - specifically, a September 17, 2020 letter to Plaintiffs and an October 10, 2020 "Mortgage Loan Statement" - show that Nationstar marked Plaintiffs' debts on April 1, 2020, and May 1, 2020 as "fully paid." (Doc. 1-2, at 41.) At the time of their September 2020 statement, Plaintiffs' reinstatement balance totaled $9,583.49, including the following: $1,520.26 for Plaintiffs' October monthly installment (including $352.86 for principal, $754.87 for interest, and $412.53 for an escrow amount); $2,365.00 for "Lender Paid Expenses"; and $6,205.04 for "Overdue

---

[2] "A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016) (citing Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir. 2019) (citing cases)). "The classic example is when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself." Id. (citation omitted).

8

Payments," minus $532.81 for a partial payment. (Id. at 39.) The September 18, 2020 mortgage loan statement shows that the total amount for "Overdue Payments" - $6,205.04 - is almost exactly consistent with Plaintiffs' unpaid balances from June 1, 2020, July 1, 2020, August 1, 2020, and September 1, 2020, for $1,550.26 each. (Id. at 39, 41.) No fees or other charges were added during this time. (Id.) Thus, based on the mortgage loan statement, Nationstar had - by September 18, 2020 at the latest - "waive[d] all fees, costs, advances and arrears, and reflect[ed] [Plaintiffs'] account current through and including April 30, 2020, and due for a May 1, 2020 payment." (Doc. 1-2, at 9.) Plaintiffs' own exhibits show that the reinstatement balance as of September 18, 2020 consisted only of overdue payments that came due starting on June 1, 2020 - after Plaintiffs were obligated, under the Settlement Agreement, to resume making monthly payments to Nationstar. (Id. at 39.) Further still, Plaintiffs' records show that Nationstar did not add fees or charges to Plaintiffs' bill even though their charges were months overdue. (Id.) The evidence shows Nationstar was in compliance with the terms of the Settlement Agreement Plaintiffs allege it breached; as such, there is no basis for specific performance of the Settlement Agreement.

As a counterargument, Plaintiffs assert dismissal is inappropriate because "the date that triggers [Nationstar's] actions to correct Plaintiffs' account should be at least April

9

30, 2020 and not July 2, 2021." (Doc. 11, at 7.) Essentially, Plaintiffs argue their failure to file the dismissal of the wrongful foreclosure case constitutes a "mutual mistake," necessitating the Court to require Nationstar to have marked their account current as of April 30, 2020, *on* April 30, 2020. (Id. at 6-9.) This argument misconstrues the nature of specific performance.

"Specific performance is an equitable remedy available when the damages recoverable at law would not be an adequate compensation for nonperformance." U.S. Bank, Nat'l Ass'n as Tr. of Cabana Series IV Tr. v. Carrington Mortg. Servs., LLC., 2022 WL 2062651, at *4 (Ga. Ct. App. June 8, 2022) (citing Simpson v. Pendergast, 659 S.E.2d 716 (Ga. Ct. App. 2008)). In such cases, the Court may "order the parties to specifically perform [a contractual] obligation." Id. "Specific performance is an extraordinary, equitable remedy, which will be granted only if the complainant does not have an adequate remedy at law. It is not a remedy that either party can demand as a matter of absolute right and will not be granted in any given case unless strictly equitable and just." Sexton v. Sewell, 830 S.E.2d 605, 608 (Ga. Ct. App. 2019) (quotations and citations omitted). By seeking specific performance, Plaintiffs ask the Court to require Nationstar to perform its obligations under the Settlement Agreement. However, Nationstar has already done so. Even if Nationstar's performance

was late, Plaintiffs' exhibits demonstrate that it *has* performed. No matter when that performance was accomplished, this obviates the need for court-ordered specific performance.

Plaintiffs also argue their July 20, 2021 mortgage loan statement (which notes a reinstatement amount of $9,977.10[3]) "[c]learly [shows] Plaintiffs' account was not marked current as required by [the] Settlement Agreement." (Doc. 11, at 8.) Plaintiffs' argument does not follow. The mortgage loan statements described above clearly show that Nationstar – sometime before September 18, 2020 – marked Plaintiffs' account as current, and their outstanding balance as settled, through May 2020. (Doc. 1-2, at 39.) The documents Plaintiffs point to demonstrate that Plaintiffs' reinstatement amount *as of July 20, 2021* – which accrued only after their April 2020 balance was marked current – totaled $9,977.10. (See Doc 1-2, at 57.) The Settlement Agreement did not require Nationstar to mark Plaintiffs' account as current in perpetuity; rather, it required Nationstar to mark the account as current through April 30, 2020. The evidence demonstrates Nationstar did so; any subsequent accumulation of account charges

---

[3] Plaintiffs actually argue this mortgage loan statement denotes a balance of $8,469.96. (Doc. 11, at 8.) Plaintiffs are incorrect. (Doc. 1-2, at 57.) Plaintiffs appear to be referencing their April 20, 2021 mortgage loan statement, which does show that balance. (Id. at 56.) This difference is immaterial, however, because neither balance affects the legal analysis above. The Court simply points out the disparity to avoid confusion.

11

does not bear on Nationstar's performance of the Settlement Agreement.[4]

The evidence shows that Nationstar complied with the Settlement Agreement; thus, Plaintiffs' claim for specific performance (Count I) must be **DISMISSED**.

**B. IIED Claims**

Next, Nationstar moves to dismiss Plaintiffs' claims for IIED. (Doc. 7-1, at 8-11.) Plaintiff argues Nationstar's "conduct has been and continues to be outrageous and egregious" which "was not welcomed by Plaintiffs and was willful, wanton, reckless, persistent, and continuous." (Doc. 1-2, at 11.) Nationstar argues the allegation is meritless.

"Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." McGinnis v. Am. Home Mortg. Serv., Inc., 817 F.3d 1241, 1258 (11th Cir. 2016) (citing Racette v. Bank of Am., N.A., 733 S.E.2d 457, 465 (Ga. Ct. App. 2012)). "To support a claim of [IIED], the

---

[4] The Court notes that although Plaintiffs assert they paid their account balance for June, July, August, September, October, and November 2020 and provide evidence demonstrating the same (See Doc. 1-2, at 15-21), their claim for specific performance relates only to whether Nationstar marked their account current through April 30, 2020. (Doc. 1-2, at 10.) Payments subsequent to April 2020 do not bear on whether Nationstar complied with the Settlement Agreement by marking the account current as of April 30, 2020. Plaintiffs do not point to any provision of the Settlement Agreement that required Nationstar to promptly apply subsequent payments to Plaintiffs' account, so any failure to do so is not germane to Plaintiffs' claim for breach of the Settlement Agreement and, accordingly, not before the Court.

conduct at issue must 'go beyond all reasonable bounds of decency so as to be regarded as atrocious and utterly intolerable in a civilized community' and '*naturally* give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress.'" Id. (quoting United Parcel Serv. V. Moore, 519 S.E.2d 15, 17 (Ga. Ct. App. 1999)).

Nothing in Plaintiffs' complaint demonstrates outrageous or egregious conduct. Plaintiffs allege Nationstar failed to perform under the Settlement Agreement. As described above, however, Nationstar *did* perform under the Settlement Agreement. In their response to Nationstar's motion to dismiss, Plaintiffs argue they "have sufficiently pleaded that [Nationstar's] failure to fulfill [it's] obligations as a loan servicer is extreme and outrageous conduct." (Doc. 11, at 10.) However, Plaintiffs' complaint does not allege Nationstar failed to perform its obligations as a loan servicer; rather, the complaint alleges Nationstar *breached the Settlement Agreement* by failing to mark Plaintiffs' account current through April 30, 2020. (Doc. 1-2, at 9-10.) While Plaintiffs state they "have made every payment as the same came due and payable," that their "July[] payment was returned," and that they "were still receiving account statements showing substantial negative balances," these allegations would not, taken as true, constitute a breach of the Settlement Agreement and, on their own, fall short of the type of egregious conduct required

13

for an IIED claim. (Id.) Accordingly, Plaintiffs' claim for IIED is **DISMISSED.**

**C. Breach of Settlement Agreement**

Count three is Plaintiffs' claim for breach of the Settlement Agreement. (Doc. 1-2, at 11.) Plaintiffs allege Nationstar "wrongfully and illegally assess[ed] fees and other charges against Plaintiffs' account" in violation of the Settlement Agreement. (Id.) Nationstar argues this claim "is meritless and directly contradicted by the exhibits Plaintiffs attached to their Complaint." (Doc. 7-1, at 12.) Nationstar is correct.

"Under Georgia law, a party who claims breach of contract must establish the existence of the contract." Ameris Bank v. SB Partners, LLC, 157 F. Supp. 3d 1356, 1360 (S.D. Ga. 2016) (citation omitted). "Once the contract is established, a plaintiff then must prove '(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken.'" Id. (quoting Norton v. Budget Rent A Car Sys., Inc., 705 S.E.2d 305, 306 (Ga. Ct. App. 2010)).

Again, the exhibits attached to Plaintiffs' complaint demonstrate that Nationstar has not assessed "fees and charges" since May 1, 2020 at the latest. (See, e.g., Doc. 1-2, at 39, 43, 48, 57.) Even if Nationstar *had* assessed additional fees and charges after April 30, 2020, Plaintiffs have not shown which, if any, contractual provision that imposition would breach.

14

Plaintiffs argue Nationstar *did* impose "fees and charges" and points to the July 20, 2021 monthly account statement as proof. (Doc. 11, at 11-12.) But Plaintiffs only point to four sums as evidence of these additional fees and charges: "Lender Paid Expenses"; "Overdue Payments"; "Reinstatement Amount Due"; and "Acceleration Amount Due." (Id. at 11.) None of these amounts amount to "fees and charges" except, perhaps, any sums of fees and charges included in the "Reinstatement Amount Due." However, the records provided by Plaintiffs demonstrate that Nationstar did not include any fees and charges in that amount. (Doc. 1-2, at 39, 57.) Even if it had, Plaintiffs here are alleging breach of the Settlement Agreement that only required Nationstar to bring Plaintiffs' account current through April 30, 2020; any additional fees and charges (like the reinstatement fees) incurred after that date would not amount to a breach of the Settlement Agreement. As such, Plaintiffs have failed to plead a breach of the Settlement Agreement and their claim for said breach must be **DISMISSED.**

### D. Common Law Tort Claim

Fourth, Plaintiffs purport to bring a "Common Law Tort Claim." (Doc. 1-2, at 11-12.) They do not name which tort they allege Nationstar has committed, simply stating they "have a common law right to be free from 'unreasonable bill-collection procedures, e.g., making false statements, threats, and harassing phone calls.'" (Id. at 11-12 (quoting Dolanson Co. v. Citizens & So.

15

Nat'l Bank, 251 S.E.2d 274, 278 (Ga. 1978)).) They allege "[Nationstar] engaged in unreasonable bill collection procedures by using improper, false, deceptive, and/or misleading representations in [its] efforts to collect a debt." (Id. at 12.) In response to Nationstar's motion to dismiss, Plaintiffs clarify their "state law tort claim for [Nationstar's] negligence in the administration of their mortgage loan is based upon [Nationstar's] breach of duty of good faith and fair dealing," stating that this is "not a contractual duty as [Nationstar] has asserted." (Doc. 11, at 13.)

As an initial matter, Plaintiffs do not plead Nationstar ever threatened them or made phone calls to them. The "unreasonable bill-collection procedures" Plaintiffs describe must be either the letters Nationstar sent to them indicating Plaintiffs had fallen behind on their payments or Nationstar's statements declining Plaintiffs' payments at various times. (See Doc. 1-2, at 9-10.) Indeed, other than the bankruptcy proceedings in this District and pre-suit communication between counsel, these letters are the only communications Plaintiffs describe in their complaint. As described above, these letters showed "substantial negative balances" - e.g., reinstatement amounts based on the outstanding debt Plaintiffs owed. (Doc. 1-2, at 10.) However, also as described above, these letters did not constitute a breach of the Settlement Agreement because the letters actually show *compliance*

16

with the Settlement Agreement. Plaintiffs therefore do not allege facts that could show an unreasonable debt collection practice. As the case Plaintiffs cite - <u>Dolanson</u>, 251 S.E.2d at 278 - holds, "reasonable and necessary actions taken by a creditor to collect a bill do not constitute an actionable wrong against the debtor." Therefore, Plaintiffs' tort claim fails as a matter of law.

Regarding Plaintiffs' 'tort' claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs misapply the law. "Although a duty of good faith and fair dealing is implied in every contract, this duty is contractual in nature and does not ordinarily give rise to tort liability." <u>ServiceMaster Co. v. Martin</u>, 556 S.E.2d 517, 522 (Ga. Ct. App. 2001) (citation omitted). "While [Nationstar] could be held liable in tort if, in addition to violating a contract obligation, it also violated a duty, independent of contract, to avoid harming [Plaintiffs], [they do] not specify facts which would support a finding that [Nationstar] owed [them] any duty independent of those created by the written . . . contract." <u>Id.</u> No tort claim arises from Nationstar's alleged breach of the implied covenant of good faith and fair dealing.

Even if Plaintiffs had sufficiently pled a claim for negligence, Nationstar correctly argues such claim would be barred by the economic loss doctrine. (Doc. 7-1, at 16-18.) "Stated most basically, the economic loss rule limits the ability of

17

contracting parties to sue one another for negligence and is used 'to distinguish between those causes of action that may be brought only in a contract action and those that give rise to an action in tort.'" Murray v. ILG Techs., LLC, 378 F. Supp. 3d 1227, 1241 (S.D. Ga. 2019) (quoting Flintkote Co. v. Dravo Corp., 678 F.2d 942, 948 (11th Cir. 1982)). "In essence, Georgia courts do not allow contracting parties to bring negligence claims for pure economic losses against one another unless some special relationship between the parties exists, such as the relationship between an attorney and her client." Id. (citations omitted). As stated above, Plaintiffs' claim arises from the contract, and they do not plead any special relationship or extra-contractual duty owed to them by Nationstar. Thus, their only damages are for economic loss arising from the contract and their claim for a common law tort fails as a matter of law. Plaintiffs' tort claim is **DISMISSED.**

**E. Punitive Damages and Attorney's Fees**

Lastly, Plaintiffs request punitive damages and attorney's fees. (Doc. 1-2, at 12-13.) "In accordance with O.C.G.A. § 51-12-5.1, punitive damages can only be awarded as *additional* damages." Nelson v. Glynn-Brunswick Hosp. Auth., 571 S.E.2d 557, 564 (Ga. Ct. App. 2002) (citing § O.C.G.A. 51-12-5.1) (emphasis added). "Punitive damages cannot be awarded in the absence of any finding of compensatory damages." Martin v. Martin, 600 S.E.2d

18

682, 683 (Ga. Ct. App. 2004) (citation omitted). So too are attorney's fees unavailable when no damages are awarded. See Alea London Ltd. V. Am. Home Servs., Inc., 638 F.3d 768, 780 (11th Cir. 2011). Because all of Plaintiffs' claims are subject to dismissal on the merits, Plaintiffs have no claim for punitive damages nor attorney's fees and their claim for the same must be **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Nationstar's motion to dismiss (Doc. 7) is **GRANTED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant Nationstar, **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 8th day of August, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA